# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

STANLEY KUZMICKI

Plaintiff,

v.

SAMANTHA HANRAHAN, *et al.*,

Defendant.

3:17-cv-00342-RCJ-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and L RIB 1-4. Before the court is Stanley Kuzmicki's first amended complaint (ECF No. 10), and motion for appointment of counsel (ECF No. 11). For the reasons discussed below, the court recommends that plaintiff's first amended complaint be dismissed, as detailed below, and that plaintiff's motion for appointment of counsel be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Stanley Kuzmicki ("plaintiff") is a resident of Fallon, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff filed a civil rights complaint (ECF No. 1-1) and an application to proceed *in forma pauperis* (ECF No. 1) on May 31, 2017. He brought suit against Samantha Hanrahan, David Hanrahan, and Warren Westad for discriminating against him and improperly evicting him from his apartment on the basis of his disability. (ECF No. 1-1 at 3–11.) He also sued Fallon Police Department Sergeant Shelly and Churchill County Deputy District Attorney Brandon Gardner for refusing to bring criminal charges against Samantha Hanrahan, David Hanrahan, and Warren Westad. (ECF No. 1-1 at 13-15.)

On September 11, 2017, the court issued a Report and Recommendation recommending that plaintiff's application to proceed *in forma pauperis* be granted and that plaintiff's complaint be dismissed. (ECF No. 3.) Specifically, the court recommended that plaintiff's claims against defendant Brandon Gardner be dismissed, with prejudice, on the basis of prosecutorial immunity.

(*Id.* at 3-4). Additionally, the court found that plaintiff failed to state claims on which relief could be granted against defendants Sergeant Shelly of the Fallon Police Department, Samantha Hanrahan, David Hanrahan, Warren R. Westad. (*Id.* at 5-7.) The court recommended that any claims asserted against these defendants be dismissed with leave to amend to rectify, if possible, the deficiencies identified. (*Id.*) Plaintiff was also advised that any allegations, parties, or requests for relief not carried forward into an amended complaint would no longer be before the court. (*Id.*)

On October 11, 2017, plaintiff filed a motion for appointment of public defender (ECF No. 5) due to his alleged mental disability and ignorance of his civil rights. The court issued an order adopting the Report and Recommendation in full and denying plaintiff's motion for appointment of a public defender. (ECF No. 8.) The court received plaintiff's amended complaint (ECF No. 10) on November 27, 2017. (ECF No. 10.) Plaintiff filed a motion for public attorney on November 28, 2017. (ECF No. 11.) This report and recommendation follows.

## II. LEGAL STANDARD

Applications to proceed *in forma pauperis* are governed by 28 U.S.C. § 1915. Section 1915 provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under section 1915 when reviewing the adequacy of a complaint or amended complaint. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).

Under Rule 12(b)(6), the court must dismiss the complaint if it fails to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept as true all well-pled factual allegations, set aside legal conclusions, and verify that the factual allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the complaint need not contain detailed factual allegations, it must offer more than "a

formulaic recitation of the elements of a cause of action" and "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

The complaint is construed in a light most favorable to the plaintiff. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). The court takes particular care when reviewing the pleadings of a *pro se* party, for a more forgiving standard applies to litigants not represented by counsel. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Still, a liberal construction may not be used to supply an essential element of the claim not initially pled. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). If dismissal is appropriate, the *pro se* plaintiff should be given leave to amend the complaint, and some notice of its deficiencies, unless it is clear that those deficiencies cannot be cured. *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995).

### III. DISCUSSION

**1. First Amended Complaint**

Plaintiff's first amended complaint exceeds one-hundred pages and contains a deluge of factual allegations and documents, the bulk of which is irrelevant minutiae. The court explicitly advised plaintiff that it is his responsibility to provide a "short and plaint statement" of his claims, but the excess of his complaint impermissibly tasks the court with preparing lengthy outlines "to determine who is being sued for what." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("The judge wastes half a day in chambers preparing the 'short and plaint statement' which Rule 8 obligated plaintiffs to submit. He then must manage the litigation without knowing what claims are made against whom…. [taking] a great deal of time away from more deserving litigants waiting in line."). Nonetheless, his amended claims against Sergeant Shelly, Samantha Hanrahan, David Hanrahan, and Warren Westad will be considered in turn. (ECF No. 10 at 1); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers") (internal quotations omitted). The court will not expend its resources to summarize plaintiff's allegations in detail.

### A. Federal Rules of Civil Procedure Rule 17 Inquiry

As a threshold matter, the court will address plaintiff's attempt to put his mental capacity at issue. Under Federal Rules of Civil Procedure Rule 17(c), a court is obliged to "appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such order as it deems proper for the protection of the infant or incompetent person." FED. R. CIV. P. 17(c). "A party proceeding pro se in a civil lawsuit is entitled to a competency determination when substantial evidence of incompetence is presented," but otherwise the court need not inquire. *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005); FED. R. CIV. P. 17(c). "[W]hen a substantial question exists regarding the mental competence of a party proceeding pro se, the proper procedure is for the district court to conduct a hearing to determine competence, so a guardian ad litem can be appointed, if necessary." *Allen*, 408 F.3d at 1153 (citing *Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir.1989)). Litigants may raise a substantial question as to their competency by way of a personal declaration, the declaration of a lay non-party, the declaration or letter of a treating healthcare professional, or medical records. *See Allen*, 408 F.3d at 1152.

Nothing in Rule 17 suggests that the mere fact of a mental disability raises a substantial question of mental incompetence. FED. R. CIV. P. 17; *see also United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir. 1986) (finding that claim of incompetence made credible not because Social Security Administration report determined plaintiff was disabled, but because the report found plaintiff "*totally* physically and mentally disabled under SSA regulations") (emphasis added). Moreover, courts have found that records of mental disability are insufficient when they do not evidence a litigant's inability "to comprehend or competently participate in court proceedings." *See, e.g.*, *Perry v. Unknown Defendant(s),* No. CV 6:16-MC-00453-MC, 2017 WL 6940702, at *2 (D. Or. Oct. 27, 2017); *Shack v. Knipp*, No. 12–CV–794–MMA, 2012 WL 4111652, at *5 (S.D. Cal. Sept. 17, 2012) (medical records reflecting a diagnosis of schizoaffective disorder insufficient to raise substantial question as to capacity to sue, due in part to records being "outdated"); *Thompson v. Virginia*, No. 11-CV-2818-NLS, 2012 WL 1154473, at *2–3 (S.D. Cal. Apr. 4, 2012) (holding the petitioner failed to submit substantial evidence of

incompetence because he did not provide medical records from the relevant time period (i.e. during case at bar) and because nothing indicated that he could not understand or respond to court orders). Instead, the Ninth Circuit appears to require that a litigant "establish that he suffers from a mental illness, the mental illness prevents him from being able to understand and respond to the court's order, and he was still suffering from the illness during the relevant time period." *Allen*, 408 F.3d at 1152 (9th Cir. 2005)

To establish that he has a mental disability, plaintiff attaches an opinion from a Social Security Administration Administrative Law Judge ("ALJ") finding that he has "major depression with psychosis, anxiety disorder, and personality disorder, nos." (ECF No. 10-1 at 7.) Regardless of the reasoning expressed therein, the ALJ's opinion is insufficient to raise a substantial question as to plaintiff's mental competency because it was issued in 2003, over fourteen years before plaintiff began the action currently before the court, in 2017. (*Id.* at 8; *see* ECF No. 1.) Without more, it is unclear how plaintiff's mental state in 2003 bears upon his ability "to understand and respond to the court's order" today. *Allen*, 408 F.3d at 1152; *Shack*, 2012 WL 4111652, at *5 (finding that lawyer's four-year old declaration of legal incompetency "provides little, if any, substantial evidence of Petitioner's competency today").

In any event, the ALJ's opinion explicitly notes that plaintiff "has a good vocabulary and is likely above average in intelligence when not impaired by the symptoms of his mental illness." (ECF No. 10-1 at 5.) Plaintiff's current ability to adequately articulate the factual circumstances of his dispute and respond to court orders is evident in plaintiff's first amended complaint, which responds to the court's request for further information by providing thirty-six handwritten pages of allegations and sixty-eight pages of pertinent documents. (*See* ECF No. 10, 10-1.) This is a far cry from the "near catatonic state" the ALJ noted when considering plaintiff's mental disability. (ECF No. 10-1 at 6.) Not only is the ALJ's opinion stale for purposes of plaintiff's capacity to sue, but it also suggests that plaintiff is not currently impaired by his mental illness. The court will not order a competency determination in the absence of further evidence.

Unfortunately, plaintiff fails to provide any further evidence of his mental incompetency. Although he references his mental disability in passing, he takes issue only with the quality of his

own self-representation and does not motion for the appointment of a guardian ad litem. (*See* ECF No. 11) (requesting appointment of counsel because "I'm not qualified to represent myself," without further elaboration); (ECF No. 10 at 3) (asking court to excuse his writing as it was the "best I can do to finish on time"). To date, he has notified the court of his change of address, filed all court documents on time, and has even requested an extension of time when he believed it necessary to meet the court imposed filing deadline. (*See* ECF Nos. 4, 5, 6, 10.) His first amended complaint is as coherent as any given *pro se* complaint, and, more relevantly, effectively responds to the court's prior order by omitting those claims dismissed with prejudice and expanding upon those dismissed as deficient. Neither his words nor his actions suggest that he is unable to participate in court proceedings.

In an abundance of caution, the court has considered whether plaintiff's reference to his mental disabilities raises a substantial question as to his mental competency to sue. After careful review, it does not appear that plaintiff is sufficiently impaired by the symptoms of his mental disabilities, if at all, for the court to order a competency hearing or otherwise inquire further. Accordingly, the court proceeds with the assumption that plaintiff is mentally competent to represent himself and proceeds to review his first amended complaint on the merits.

**B. Sergeant Shelly**

The court previously dismissed plaintiff's section 1983 claim against Sergeant Shelly for failing to state a plausible claim upon which relief could be granted. (ECF No. 3 at 3–5; ECF No. 8). The thrust of plaintiff's allegations was that Sergeant Shelly refused to allow plaintiff to file "criminal complaint(s)" and declined to investigate the Hanrahans or his neighbor. (ECF No. 1-1 at 12.) The court advised plaintiff that his claim was implausible on its face as he contradicted his claims by admitting that Shelly listened to his accusations, provided suggestions on how to seek redress for the alleged harms, and authored police reports in response to those interactions. (ECF No. 3 at 4-5.) Furthermore, the court noted that plaintiff failed to identify a constitutional or federal basis for holding Shelly liable, and did not identify the relief sought. (*Id.*) Plaintiff now clarifies that he is suing under the Fourteenth Amendment Due Process Clause and Equal Protection Clause.

The Supreme Court has made clear that the Fourteenth Amendment Due Process Clause does not "require[] the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 196 (1989) (rejecting argument that police department created "special relationship" with child by proclaiming its intention to protect the child from father's abuse). Rather, "[t]he Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.*; *see Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (holding that a citizen "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction").

Plaintiff fails to allege any new information that could expose Sergeant Shelly to liability under the Fourteenth Amendment Due Process Clause. Instead, he recounts with excruciating tedium the extent of his interactions with Sergeant Shelly. (ECF No. 10 at 24–34.) His claims against Shelly continue to be limited to Shelly's apparent rudeness, his refusal to allow plaintiff to file "criminal complaints" regarding plaintiff's various tenancy disputes, and, finally, his failure to charge the Hanrahans for allegedly forging plaintiff's signature on a move-out inspection report. (*Id.*). However, neither the Due Process Clause nor any other portion of the constitution mandate that Sergeant Shelly treat plaintiff kindly. *See Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 271 (S.D.N.Y. 2011) (when uttered by a law enforcement agent, "verbal harassment or profanity alone … does not constitute the violation of any federally protected right"). Furthermore, Sergeant Shelly, as a constitutional matter, was not obliged to respond to every single allegation he received involving plaintiff's tenancy disputes. *DeShaney*, 489 U.S. at 196. Nor was he required to do anything more than listen to plaintiff's accusations and determine the propriety of further action. *Rossi*, 790 F.3d at 735; *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) (Police officers do not have an affirmative duty to investigate crimes in a particular manner). Plaintiff's factual allegations simply do not state a cognizable claim under the Due Process Clause. 28 U.S.C. § 1915(e)(2)(B)(ii).

With respect to plaintiff's equal protection claim, the Ninth Circuit has acknowledge that "there is no right to state protection against madmen or criminals, but '[t]here is a constitutional

right ... to have police services administered in a nondiscriminatory manner—a right that is violated when a state actor denies such protection to disfavored persons.'" *Elliot-Park v. Manglona*, 592 F.3d 1003, 1006 (9th Cir. 2010) (quoting *Estate of Macias v. Ihde*, 2019 F.3d 1018, 1028 (9th Cir. 2000)); *DeShaney*, 489 U.S. 193 n.3 ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause.").

Even so, plaintiff's factual allegations and the documents he attaches are insufficient to support such a claim. Assuming that plaintiff's mental disabilities render him a "disfavored person,"[1] there is no indication from either plaintiff's allegations or Sergeant Shelly's incident reports that Sergeant Shelly discriminated against plaintiff on the basis of his disability. For example, plaintiff alleges that Sergeant Shelly commented on plaintiff's mental disability on two separate occasions, but it is apparent that Shelly did so only to direct plaintiff to seek mental health care. (ECF no. 10 at 25, 26.) Furthermore, it is unclear what services plaintiff alleges that Sergeant Shelly refused to provide him on the basis of his mental disability. Sergeant Shelly investigated and reported plaintiff's tenancy disputes. (*See* ECF No. 10-1 at 38–68.) Sergeant Shelly's reports demonstrate that he responded to and investigate, where necessary, plaintiff's tenancy disputes. (*Id.*) The reports do not mention disability and evidence other, rational grounds for declining to arrest the targets of plaintiff's accusations or investigate further. (*Id.*)

Accordingly, the court recommends that plaintiff's Fourteenth Amendment due process and equal protection claims be dismissed. Dismissal should be with prejudice because plaintiff's first amended complaint is factually exhaustive; it is clear that he is unable to allege any further factual allegations that could raise his right to relief above a speculative level. *See Cato*, 70 F.3d at 1106.

---

[1] In *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432 (1985), the Supreme Court ruled that intellectual disability did not constitute a quasi-suspect classification under the Fourteenth Amendment. 473 U.S. at 450. However, it struck down the allegedly discriminatory zoning ordinance in question because it appeared "to rest on an irrational prejudice against" persons with intellectual disabilities, which suggests some modicum of constitutional protection under the Fourteenth Amendment Equal Protection Clause. *Id.*

### C. Samantha Hanrahan, David Hanrahan and Warren Westad

The court previously dismissed plaintiff's section 1983 claims against Samantha Hanrahan, David Hanrahan, and Warren Westad because none of these defendants is a government actor liable to suit. (*See* ECF No. 3 at 7; ECF No. 7.) The court also found that plaintiff failed to state a claim because plaintiff provided only conclusory allegations that did not support his discrimination and harassment claims, failed to identify specific statutory provisions supporting those claims, and did not specify the relief he sought. (ECF No. 3 at 5-6.)

The first amended complaint complies with the court's order by identifying the statutory bases for plaintiff's claims and the relief sought against Samantha Hanrahan, David Hanrahan, and Warren Westad. (*See* ECF No. 10 at 3, 23.) Plaintiff now alleges various violations of the Fourteenth Amendment, the Federal Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act of 1973, and related implementing regulations. (*See* ECF No. 10 at 3–24.) He requests $50,000 in compensatory damages for emotional distress and $250,000 in punitive damages, though he does not explain how he arrived at these figures. (*See id.* at 23.)

However, not only did the court remind plaintiff that he must not force the court to spend its resources "preparing the 'short and plain statement' which Rule 8 obligated [him] to submit," but plaintiff was explicitly advised to list his claims in the designated spaces on the *in forma pauperis* form. (*Id.* at 6.) Rather than organizing and distinguishing his claims as separate counts with the applicable law clearly noted, plaintiff presents the entirety of his ponderous allegations against Samantha Hanrahan, David Hanrahan, and Warren Westad in Count I. (*Id.* at 3–20.) Plaintiff once again calls on the court to disentangle and interpret his allegations, now vastly expanded. ECF No. 3 at 6.) Dismissal on this basis alone is proper. FED. R. CIV. P. 8(a)(2), (d)(1); *see Lampkin-Asam v. Volusia Cty. Sch. Bd.*, 261 F. App'x 274, 276–77 (11th Cir. 2008) (pro se complaints that are "disjointed, repetitive, disorganized and barely comprehensible" are subject to dismissal).

Dismissal is also warranted on the merits. Plaintiff claims violations of the following statutes: 28 U.S.C. § 1983; the Fourteenth Amendment Due Process Clause and Equal Protection Clause; 42 U.S.C. §§ 3603–3606, 3617 of the Fair Housing Amendments Act; 29 U.S.C. § 794(a)

of the Rehabilitation Act of 1973;[2] Title II of the Americans with Disabilities Act, 42 U.S.C. §12133; and 45 C.F.R. § 84.52(a)(1)–(5). (ECF No. 10 at 3.) The court now turns to plaintiff's claims.

*1.     Section 1983*

Plaintiff asserts jurisdiction under 28 U.S.C. § 1983. (ECF No. 10 at 3.) Section 1983 applies only to persons acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiff alleges that the remaining defendants are the recipient of federal funds, not state funds. Section 1983 does not apply as there is no basis for the court to attribute the actions of these defendants to the state. *Daly–Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) ("§ 1983 provides no cause of action against federal agents acting under color of federal law.").

*2.     Fourteenth Amendment Claim Under* Bivens

Nonetheless, the court will consider plaintiff's due process and equal protection claims.[3] "*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* , 403 U.S. 388 (1971), established that compensable injury to a constitutionally protected interest [by federal officials] could be vindicated by a suit for damages invoking the general federal-question jurisdiction of the federal courts[.]" *Butz v. Economou*, 438 U.S. 478, 486 (1978). "Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991). Here, the receipt of federal funding does not transform defendants into federal actors susceptible to an equal protection and due process claim. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) (refusing to extend *Bivens* to private prison that had federal contract). Even assuming

---

[2] Plaintiff references the "FHAA's section 504 H.R. Rep No. 100-711," which appears to be a citation to both the FHAA, which was given the bill designation listed above in the 100th Congress, and to Section 504 of the Rehabilitation Act, which is codified at 28 U.S.C. § 794.

[3] Plaintiff references the Fourteenth Amendment Equal Protection Clause and Due Process Clause, but the court construes his claims as brought under the Fifth Amendment because the Fourteenth Amendment does not apply to federal actors. *Bollinger v. Sharpe*, 347 U.S. 497 (1954) (incorporating the Fourteenth Amendment Equal Protection Clause against federal actors through Fifth Amendment Due Process Clause); *Davis v. Passman*, 442 U.S. 228, 245 (1979) (recognizing cause of action under *Bivens* for violations of Fifth Amendment Due Process Clause and Equal Protection Clause).

10

defendants were federal actors, Congress has provided a comprehensive remedial scheme for housing violations in the FHA, and to a more limited extent the ADA and Rehabilitation Act of 1973, discussed below. *Bush v. Lucas*, 462 US 367 (1983) (declining to recognize *Bivens* action because of existence of statutory remedial scheme and noting that the court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants.") Therefore, plaintiff's Fourteenth Amendment due process and equal protection claims should be dismissed with prejudice, as further amendment would be futile.

### 3. FHA, ADA, and Rehabilitation Act of 1973 Claims

The bulk of plaintiff's statutory references are to the Fair Housing Amendments Act ("FHAA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1973.

The Fair Housing Act makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap[.]"[4] 42 U.S.C. § 3604(f)(1) (2012). USDA-subsidized housing, such as the one at issue here. are "dwellings" under 42 U.S.C. § 3602(b), and therefore the FHA prohibits discriminatory actions that adversely affect the availability of such housing. *See, e.g., Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1213–16 (11th Cir.2008); *Lakeside Resort Enters., LP v. Bd. of Supervisors of Palmyra Twp.,* 455 F.3d 154, 160 (3d Cir.2006); *Larkin,* 89 F.3d at 289.

Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2012). Like the FHA, this provision prohibits governmental entities from discriminating against disabled persons through adverse housing actions. *See Bay Area Addiction Research & Treatment, Inc. v. City of Antioch,* 179 F.3d 725, 730–32 (9th Cir.1999).

Moreover, "Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act." *Duvall v. Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). It prohibits discrimination "solely"

---

[4] Although the FHA refers to "handicap," the court will "use the preferred term, 'disabled,' except when referring to the statutory language." *Budnick v. Town of Carefree,* 518 F.3d 1109, 1114 n.5 (9th Cir. 2008).

on the basis of disability in federally funded programs and activities. 29 U.S.C. 794(a) (2012). Based on plaintiff's limited allegations that his apartment complex is subsidized by the USDA, which defendants manage, both the Rehabilitation Act and the ADA presumably apply.

A plaintiff can establish a discrimination claim under the FHA, ADA, or Rehabilitation Act under a theory of disparate treatment, disparate impact, or failure to provide a reasonable accommodation. *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997) (also noting that the Ninth Circuit "appl[ies] Title VII discrimination analysis in examining [FHA] discrimination claims"); *Giebeler v. M&B Assoc.,* 343 F.3d 1143 (9th Cir. 2003) (FHA also requires landlords to make reasonable accommodations in rules, policies, practices, or services for tenants with disabilities). Plaintiff does not base his claims on a theory of disparate impact, nor does he claim that he was a denied a reasonable accommodation related to his disability. His claims appear to rely solely on a theory of disparate treatment.

The standards regarding disparate treatment claims under the ADA are typically identical to those brought under the FHA, and courts accordingly "interpret them in tandem." *Tsombanidis v. West Haven Fire Dep't,* 352 F.3d 565, 573 n. 4 (2d Cir.2003; *See Zukle v. Regents of University of California,* 166 F.3d 1041, 1045 n. 11 (9th Cir.1999). However, "[t]he causal standard for the Rehabilitation Act is even stricter" as it requires a showing that plaintiff's disability was the sole reason for the denial of services. *Martin v. Cal. Dep't of Veteran Affairs*, 560 F.3d 1042, 1048–49 (9th Cir. 2009). The court will review plaintiff's discrimination claims under the FHA and ADA standard because a failure to state a claim under this more lenient standard necessarily entails the same conclusion for a claim under the Rehabilitation Act.

To bring a disparate treatment claim under the FHA and ADA, the plaintiff must show that a discriminatory reason was a "motivating factor" in the defendant's decision. *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005). Furthermore, to recover monetary damages, a plaintiff must prove intentional discrimination by the defendant. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138–39 (2001). The standard for intentional discrimination is deliberate indifference, requiring the plaintiff to show that the defendant knew "harm to a federally protected right [wa]s substantially likely" and failed to act upon that likelihood. *Id.* at 1139.

The events plaintiff describes in his complaint show that the actions taken against him were on the basis of his continuing violations of the terms of his lease, and not on the basis of his disability. Plaintiff admits to having a long-standing dispute with his neighbor, whom he appears to refer to as "jezebel." (ECF No. 10 at 4–7.) Plaintiff further admits that Samantha and David Hanrahan advised him to refrain from engaging in harassment and nuisance. (*Id.* at 4–5.) While he vehemently argues that he was not given written details of the harassment and nuisance at issue, plaintiff notes that David Hanrahan told him, on multiple occasions, to stop staring at this neighbor's window and to refrain from interacting with her. (*Id.* at 5, 9–10.) He refused to discontinue his conduct. (*Id.* at 9) (when told not to look at his neighbor's windows, plaintiff responded by screaming, "[y]es I can!"). Samantha and David Hanrahan offered to move plaintiff to another unit, likely to resolve this tenant dispute, but plaintiff flatly refused. (ECF No. 10 at 4.)

At some point after notifying plaintiff that he was in violation of the terms of the lease, David Hanrahan told plaintiff that he must be "the dumiest[sic] retard I ever met" and that "we have a business to run … stop visiting Niki … you will be evicted!" (*Id.* at 6.) Plaintiff mentions that Niki was a friend he often visited that lived nearby, and that while walking to her apartment he would look at his neighbor's window, among others. (*Id.* at 4.) David's statement is certainly insensitive and inflammatory, but the animus appears to be geared towards plaintiff's problematic habit of looking at his neighbor's window. Regardless, plaintiff claims that this statement was made in August 13, 2013, nearly two years before he was eventually evicted. (*Id.* at 6.) Plaintiff does not describe any other discriminatory conduct for which the comment might serve to support his claim of discrimination on the basis of his disability.

Moreover, plaintiff admits to further violations of his lease, including placing carpeting in the gutter drain outside of his bedroom, placing carpeting outside of his door, and failing to clean up after his service dog. Plaintiff claims that David Hanrahan would repeatedly remove the carpeting plaintiff had installed in areas prohibited by the terms of his lease, and that while doing so David would call plaintiff a "retard," sometimes followed by "I'm joking." (*Id.* at 13.) Again, David's statements are insensitive but clearly made in response to plaintiff's continuing violations

of the terms of his lease. In any event, plaintiff has no protected right to obstructing his gutter drains or otherwise violating the terms of his lease. Furthermore, plaintiff does not claim that Samantha Hanrahan or Warren Westad made any insensitive comments possibly relating to his disability, nor is there any indication that their behavior towards plaintiff was based on anything more than plaintiff's continuing lease violations. Defendants provided plaintiff multiple opportunities to comport himself to the terms of the lease over the course of nearly two years. Plaintiff was eventually evicted, and in a subsequent proceeding with the USDA, Westad further supported this decision by noting that plaintiff had threatened senior citizens.

Plaintiff's right to remain in his apartment is protected by the FHA, ADA, and Rehabilitation Act, but the court cannot find that he his eviction was "more likely than not motivated" by his disability. *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir.2008) (internal citation omitted). Nor is any deliberate indifference to his rights as a person with disabilities apparent on the face of his complaint. *See Duvall*, 260 F.3d at 1139. Thus plaintiff has failed to adequately plead the elements of either an FHA, Rehabilitation Act, or ADA claim, or a claim brought under related regulations, because in each case he failed to plead actionable discriminatory conduct.

*4. 42 U.S.C. § 3617*

Plaintiff also appears to plead a retaliation claim under the FHA. 42 U.S.C. § 3617 (2012). Section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed … any right granted or protected" by the FHA. *Id.* Plaintiff basis his claim of retaliation on David Hanrahan's "impermissible outrage" toward him for repeatedly going to the Fallon Police Department regarding his neighbor. (ECF No. 10 at 19.) Plaintiff does not elaborate on the nature of this impermissible outrage, but is likely referring to his allegation that on August 13, 2013, David Hanrahan entered plaintiff's apartment and yelled: "You must be the dumiest[sic] retard [he] ever met. What you think you're going to the police again … we have business to run .. stop insiting[sic] Niki … you will be evicted!" (*Id.* at 6.)

David Hanrahan's alleged name calling is reprehensible, but does not in itself appear to constitute coercion, intimidation, threatening language, or interference. Although David mentions the police in the same breath, it is not clear that he is commanding plaintiff to refrain from complaining to the police. Rather, the thrust of David's comments appears to be that plaintiff must stop inciting Niki. Plaintiff's underlying complaints to the police relate to his dispute with a neighbor, which, from the allegations provided, do not relate to plaintiff's disability. *See Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F.Supp.2d. 1133 (S.D. Fla. 2004) (manager did not have duty to stop racial harassment from one neighbor against another). . In any event, complaining to the police is not a right protected by any provision in the Fair Housing Act. *See* 42 U.S.C. §§ 3603-3606. Accordingly, the court recommends that plaintiff's retaliation claim be dismissed with prejudice to the extent that it is based on David Hanrahan's "impermissible outrage." (ECF No. 10 at 19.)

### 5. *45 C.F.R § 84.52(a)(1)-(5)*

45 C.F.R. § 84.52(a) prohibits recipients of federal funding from engaging in specified forms of discrimination on the basis of disability. 45 C.F.R. § 84.52(a) (2018). Specifically, it states:

> (a) *General*. In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap:
> (1) Deny a qualified handicapped person these benefits or services;
> (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered nonhandicapped persons;
> (3) Provide a qualified handicapped person with benefits or services that are not as effective (as defined in § 84.4(b)) as the benefits or services provided to others;
> (4) Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons; or
> (5) Provide different or separate benefits or services to handicapped persons except where necessary to provide qualified handicapped persons with benefits and services that are as effective as those provided to others.

*Id.* For purposes of plaintiff's claim, a "qualified handicap person" is one who meets the essential eligibility requirements for continuing his tenancy at a federally subsidized apartment

complex. *See Brecker v. Queens B'nai B'rith Housing Development Fund Co.,* 607 F. Supp. 428 (E.D.N.Y. 1985). As discussed above, defendants did not evict plaintiff on the basis of his disability. Furthermore, his failure to correct his lease violations prevents him from claiming that he is qualified under this provision. Plaintiff points to no other service that defendants denied him, or provided to him differently than to other tenants.

In conclusion, the court dismisses plaintiff's claims against David Hanrahan, Samantha Hanrahan, and Warren Westad without prejudice, with leave to amend to afford plaintiff the opportunity to more clearly organize his claims and allege facts, and only those facts, that may be relevant under each particular claim.

**2. Response to Screening Order and Request for Pro Bono Attorney**

Plaintiff moves the court to "appoint a public attorney in his case" because he is not "qualified to represent [himself]." (ECF No. 7 at 7.) A litigant in a civil rights action does not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir.1981). Although the court cannot compel counsel to represent a party nor direct payment for a litigant's attorney's fees, *Mallard v. United States Dist. Ct.*, 490 U.S. 296, 304–05 (1989), it is within the court's discretion to ask an attorney to represent an indigent litigant. 28 U.S.C. 1915(e)(1) (2012); *see, e.g.*, *Antonetti v. Skolnik*, No. 3:10-CV-00158-LRH, 2013 WL 593407, at *2 (D. Nev. Feb. 13, 2013), *adhered to*, No. 3:10-CV-00158-LRH, 2013 WL 4402334 (D. Nev. Aug. 14, 2013) (noting that "circumstances in which a court will grant such a request, however, are exceedingly rare ….")

In the District of Nevada, General Order 2016–01 establishes the Pro Bono Program through which volunteer lawyers provide their time and resources to preserve access to justice for individuals unable to afford counsel. GEN. ORDER NO. 2016-01 (D. Nev. 2016). At any time during the course of litigation, the court may exercise its discretion to refer the case to the Program for the appointment of pro bono counsel. General Order 2016-01 contains a non-exhaustive list of factors that a court may consider in determining whether referring a case to the Program is appropriate. *Id.* Of these factors, the court is required to consider 'the likelihood of success on the merits as well as the ability of the petitioner to

articulate his claims *pro se* in light of the complexity of the legal issues involved." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). "Neither of these considerations is dispositive and instead must be viewed together." *Id.*

The court declines to refer this case to the Program. Plaintiff does not lack "the capability … to present the case" in the absence of an attorney. GEN. ORDER NO. 2016-01; *Johns*, 114 F.3d at 877-78. His lengthy complaint, which contains thirty-five pages of handwritten allegations, reveals sufficient writing ability and legal knowledge to apprise the court of any claim he may have. As discussed above, the issue is that the dispute plaintiff complains of does not give rise to a cognizable claim under federal law, and the court does not have jurisdiction to consider any derivative state law claim that plaintiff may have. The court declines to refer plaintiff to the Program under these circumstances.

### IV. CONCLUSION

For the foregoing reasons, the court finds that plaintiff is competent to bring suit under the Federal Rules of Civil Procedure, and recommends that plaintiff's first amended complaint be dismissed. Dismissal should be with prejudice as to Sergeant Shelly because planiltiff fails to state a claim and his exhaustive allegations make clear that further amendment would be futile. Furthermore, plaintiff's Fourteenth Amendment claims against Samantha Hanrahan, David Hanrahan, and Warren Westad should be dismissed with prejudice, as plaintiff is unable to assert either a section 1983 or *Bivens* claim against these defendants. The court recommends that plaintiff's remaining statutory claims be dismissed without prejudice, with leave to amend to allow plaintiff another opportunity to cure the defects noted above. The court declines to request that an attorney represent plaintiff as it is extremely unlikely that he can succeed on the claims.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's claims against Sergeant Shelly be **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that the plaintiff's Fourteenth Amendment due process and equal protection claims against David Hanrahan, Samantha Hanrahan, and Warren Westad be **DISMISSED WITH PREJUDICE;**

**IT IS FURTHER RECOMMENDED** that the plaintiff's remaining claims against David Hanrahan, Samantha Hanrahan, and Warren Westad be **DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND;**

**IT IS FURTHER ORDERED** that plaintiff shall have **thirty (30) days** from the date that this order is entered to file a second amended complaint remedying, if possible, the defects identified above. The amended complaint must be a complete document in and of itself, and will supersede the original complaint in its entirety. Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the court. Plaintiff is advised that if he does not file an amended complaint within the specified time period, the court will recommend dismissal of his complaint WITH PREJUDICE. Plaintiff shall clearly title the amended complaint by placing the words "SECOND AMENDED" immediately above "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983" on page 1 in the caption, and plaintiff shall place the case number, 3:17-cv-00342-RCJ-VPC, above the words "SECOND AMENDED COMPLAINT."

**DATED**: May 4, 2018.

_____
**UNITED STATES MAGISTRATE JUDGE**